UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |  |
|---|---|---|
| BRIAN SHEVLAND, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| PATRICK ORLANDO and ARC GLOBAL INVESTMENTS II, LLC, | ) ) ) | Case No.: 1:21-cv-24324-DPG |
| Defendants. | ) ) ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT ARC'S LIMITED OBJECTIONS TO AND APPEAL FROM THE MAGISTRATE JUDGE'S ORDER ON DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND STAY CASE**

Pursuant to Federal Rule of Civil Procedure 72(b) and S.D. Fla. Mag. J. R. 4(b), Plaintiff Brian Shevland ("Plaintiff" or "Shevland") hereby responds to Defendant ARC Global Investments II, LLC's ("ARC") Limited Objection to and Appeal from the Magistrate Judge's Order on Defendants' Joint Motion to Compel Arbitration and Stay Case (ECF No. 46) (the "Objection"), which was filed in response to Magistrate Judge Edwin G. Torres's Order dated September 19, 2022 (ECF No. 45).

## INTRODUCTION

This case arises out of an agreement (the "SPAC Business Agreement") between Shevland and Defendant Patrick Orlando ("Orlando") to work together to promote and invest in a series of special purpose acquisition companies ("SPACs"). One such SPAC was Digital World Acquisition Corporation ("DWAC"), for which ARC was the sponsor company. As detailed in the Complaint, Shevland worked diligently to promote DWAC and prepare it for a successful

merger with Trump Media and Technology Group ("TMTG") only to be denied the opportunity to invest in DWAC by Orlando, who reneged on the SPAC Business Agreement. Shevland accordingly brought this Action for breach of contract and related claims against Orlando, seeking the DWAC shares to which he is entitled. Shevland also brought a claim for unjust enrichment against ARC, who, as DWAC's sponsor, benefited from Shevland's work under the SPAC Business Agreement and now holds the shares that Shevland was denied. Finally, Shevland sought a declaratory judgment regarding ownership of the disputed shares in DWAC.

After Shevland filed his Complaint, Orlando and ARC filed a Joint Motion to Compel Arbitration and Stay Case (ECF No. 18). Orlando asserted that the Court should compel FINRA arbitration as between them because both Shevland and Orlando are or have been FINRA-associated persons. ARC separately argued that its claims should also be arbitrated before FINRA because Shevland's allegations support a finding that ARC was a "customer" of Shevland within the meaning of FINRA Rule 12200.

On September 19, 2022, the Magistrate Judge issued an Order on Defendants' Joint Motion to Compel Arbitration and Stay Case (ECF No. 45) (the "Order"), in which he ruled that Shevland's claims against Orlando must be submitted to FINRA arbitration because both are "associated persons" under FINRA rules, but the claims against ARC are not subject to FINRA arbitration because ARC was not a "customer" of Shevland under FINRA rules. ARC has now appealed the Order (ECF No. 46). ARC raises three points of alleged error with the Order, which ARC contends mandate that the Order be overruled. As explained herein, ARC's arguments are unavailing, and this Court should overrule ARC's objections and adopt the Magistrate Judge's findings and Order in full.

*First*, ARC alleges that "the Magistrate Judge made critical errors in reviewing and understanding the evidence," in part because "Shevland obfuscated [the purported relationship between ARC and DWAC] in his Complaint and filings with the Court by playing fast and loose with his references to DWAC." Objection at 5, 9. Essentially, ARC accuses Shevland of deliberately misrepresenting the relationships among Shevland, DWAC, and ARC such that the Magistrate Judge failed to understand those relationships, resulting in an erroneous ruling. This is baseless. Shevland fully articulated the facts of the case in his Complaint and attached 33 exhibits to the Complaint, including several public SEC filings, all of which fully explained the relationships between the entities and individuals in question. The Magistrate Judge had all of that information available to him and correctly assessed that ARC was not a customer under the FINRA rules.

*Second*, ARC claims that the Magistrate Judge declined to follow binding Eleventh Circuit precedent regarding the definition of "customer" under FINRA Rules, relying instead on non-binding rulings from trial courts and other Circuits. These arguments are meritless. The Order explains at length why ARC's "cherry-picked reading of [the] caselaw [it relied upon] distorts the holdings of these cases and misses the mark." Order at 17. That observation was as true then as it is now. The two Eleventh Circuit rulings that ARC insists conflict with the Order both rest on markedly different facts, and stand for a very distinct proposition not applicable here—namely, they answered the question of "whether the customer of an associated is also a customer of the broker-dealer who supervised the associated person, even if the broker-dealer had no knowledge of the transaction." Order at 17 (internal quotations and citations omitted). Moreover, *Tradespot Markets Inc. v. Icaro Media Group Inc.*, 2022 WL 3701201 (S.D. Fla. Apr. 1, 2022), the recent

ruling to which ARC points as illustrative of the Magistrate Judge's legal error, is not only factually inapposite, it explicitly affirms the definition of customer applied by the Magistrate Judge.

***Third***, ARC claims that the Magistrate Judge disregarded his "duty to resolve all doubts in favor of arbitration." But a court does not have to resolve doubts in favor of arbitration where no such doubts existed in the first instance. The Order expresses no doubt as to ARC's non-customer status (because there is none), and thus no such duty existed. ARC cannot create "doubt" merely by filing a motion calling the issue of arbitration into question.

## FACTS AND PROCEDURAL BACKGROUND

From December 2020 through February 2021, Shevland and Orlando finalized the terms of the SPAC Business Agreement, which provided, in relevant part, that the two would share "the opportunity but not the obligation to invest up to equal amounts in all current and future SPAC opportunities, whether internal or external, at the same terms (same price/share)." Complaint ¶¶ 15-21. ARC was not a party to the SPAC Business Agreement.

On May 26, 2021, Orlando filed an initial Form S-1 with the Securities and Exchange Commission indicating the intent to publicly offer shares of DWAC. *Id.* ¶ 26. According to DWAC's S-1, as DWAC's sponsor ARC purchased shares of DWAC and held them subject to certain restrictions and agreements set forth in the S-1. *Id.* at Ex. DD (ECF No. 1-33). Because DWAC was a SPAC covered under the SPAC Business Agreement, Shevland and Orlando were each to have equal opportunity to purchase shares of DWAC at pre-IPO prices that could be very lucrative. *Id.* ¶¶ 26-34. As the initial fundraising period for DWAC progressed, Shevland participated in all aspects of the capital raise and Orlando initiated paperwork for Shevland to join the DWAC Board of Directors, which entitled Shevland to an additional 7,500 shares in DWAC.

*Id.* ¶ 32-33, 38.  For his efforts, Shevland received no commissions or compensation, nor did he request any.  Declaration of Brian Shevland in Support of Plaintiff's Opposition to Defendant's Joint Motion to Compel Arbitration and Stay Case ¶ 5 (ECF No. 21-1) ("Shevland Decl.").  Rather, the SPAC Business Agreement gave him the right to purchase DWAC shares at the same share price as Orlando.

In the weeks leading up to DWAC's IPO, Orlando froze out Shevland and refused to let him make any investment in DWAC.  *Id.* ¶ 44.  During that time, with no notice to Shevland, DWAC filed an amended S-1 with Shevland's name removed from the Board of Directors and including the fraudulent claim that "[o]n August 18, 2021, 7,500 founder shares were returned to [ARC] from a former director nominee."  *Id.* ¶¶ 54-55, and Ex. BB (ECF No. 1-31).  Following DWAC's IPO on September 3, 2021, DWAC filed an SEC Schedule 13D reporting that ARC held a total of 6,623,484 shares in DWAC, of which 5,490,000 were "founder shares" of the kind to which Shevland was entitled under the SPAC Business Agreement.  *Id.* ¶¶ 58-60, and Ex. GG (ECF No. 1-36).

On December 14, 2021, Shevland filed his Complaint in this Court, seeking to vindicate his rights under the SPAC Business Agreement and recover the DWAC shares to which he is entitled by virtue of his work promoting DWAC.  Specifically, Shevland brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Orlando, and claims for unjust enrichment and a declaratory judgment regarding ownership of the DWAC shares held by ARC against both Orlando and ARC.

On January 28, 2022, Orlando and ARC filed their Joint Motion to Compel Arbitration and Stay Case (ECF No. 18).  ARC argued that Shevland's Complaint could be read in a manner to

suggest that his work on behalf of *DWAC* made ARC a "customer" of Shevland, and that FINRA Rule 12200 thus mandates FINRA arbitration. *Id.* at 3-4, 11.  Rule 12200 provides that parties must arbitrate a dispute with FINRA where "[t]he dispute is between a customer and a member or associated person of a member" and "[t]he dispute arises in connection with the business activities of the member or associated person."

As Shevland argued in his Opposition to the Motion to Compel, ARC's assertion of customer status is unsupported by the facts. Opp. at 9-12.  The Complaint does not allege: that ARC was Shevland's customer; that ARC purchased goods or services from Shevland; that Shevland provided any type of investment advice to ARC; that Shevland solicited payment or commission from ARC for services rendered; or that Shevland had any type of contractual relationship with ARC.  Indeed, Shevland submitted a Declaration in opposition to ARC's Motion attesting to these facts.  *See generally* Shevland Decl. (ECF No. 21-1).  ARC, on the other hand, submitted no affidavits or other evidence to support of its contention that it was Shevland's "customer."  *See generally* Objection at 3-4, 11.

On September 19, 2022, the Magistrate Judge determined that although Shevland is a FINRA-associated person (which Shevland does not dispute), ARC was not a "customer" of Shevland, and thus is not entitled to FINRA arbitration.  As the Magistrate Judge explained: "Looking at the case against ARC given the context of the rule, ARC is not a customer as it does not engage in the purchase of commodities or services from a FINRA member."  Order at 17. Following this, ARC filed its Objections, setting forth three bases on which this Court should reject the Magistrate Judge's Order and findings:  (1) the Magistrate Judge failed to properly understand and interpret the evidence concerning ARC and Shevland's relationship, in part due to

"obfuscation" by Shevland; (2) the Magistrate Judge applied an improperly limited definition of "customer" within the meaning of Rule 12200 and thereby disregarded binding Eleventh Circuit precedent; and (3) the Magistrate Judge failed to apply the principle that any doubts concerning arbitrability should be resolved in favor of arbitration.

## ARGUMENT

### 1. The Magistrate Judge properly concluded that ARC was not a "customer" of Shevland.

ARC's first argument rests on two unfounded assertions: first, that Shevland deliberately "obfuscated and confused" the facts to "disguise" his relationship with ARC; and second, that the Magistrate Judge "made critical errors in reviewing and understanding the evidence" in reaching his conclusion that ARC was not a customer of Shevland. Objections at 3, 5. ARC is wrong on both counts. On a purely practical level, Shevland attached 33 exhibits to his Complaint, including several publicly filed documents, that lay bare the full extent of his relationship with both Orlando and ARC. To impute any deliberate withholding or "obfuscation" of information to Shevland in light of this is nonsensical. Further, the Magistrate Judge's thorough Order belies the notion that that the Magistrate Judge made a "critical error" in reviewing and understanding the ample documentary evidence with which he was provided.

The facts of this case make clear that, under Rule 12200 and the caselaw interpreting it, ARC was in no way a customer of Shevland. This Court has previously stated that "a customer under FINRA Rule 12200 is one who, while not a broker or dealer, either: (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Pictet Overseas Inc. v. Helvetia Trust* ("*Pictet I*"), 2017 WL 10403345, at *5 (S.D. Fla. Apr. 14, 2017), *aff'd* ("*Pictet II*"), 905 F.3d 1183, 1188-89 (11th Cir. 2018) (quoting *Citigroup Global Markets Inc. v.*

-7-

*Abbar*, 761 F.3d 268, 275 (2d Cir. 2014)). In *Pictet I*, this Court held that the defendants were not "customers" under Rule 12200 because the defendants never had accounts with the plaintiffs, never bought or sold any securities from the plaintiffs, and never had any contractual relationship with the plaintiffs. 2017 WL 10403345, at *5. Here, similarly, ARC never purchased or contracted to purchase any goods or services from Shevland or Shevland's firm, nor did it have an account with Shevland or Shevland's firm.[1] Indeed, ARC has never asserted that it did either of things, nor has it adduced any evidence purporting to show that it did. ARC was never even a party to the SPAC Business Agreement that is central to this dispute. ARC is simply the holding company for the shares in DWAC whose ownership is now in dispute. *See* Complaint at ¶¶ 56-61.

ARC now presents, for the first time, a sample subscription agreement, and implies that this somehow constituted evidence that "Shevland was performing services for ARC." Objection at 9, and Ex. 1. It does no such thing. As explained in the Complaint, Shevland was raising capital for DWAC because of the SPAC Business Agreement *with Orlando*, not because of any purported relationship he had with *ARC*.[2] This newly presented evidence does not (and cannot) alter the immutable fact that ARC: (1) never purchased any goods or services from Shevland, and (2) never had an account with Shevland. As noted *infra*, courts in this Circuit have repeatedly observed that to be a "customer" under the applicable FINRA rule, the customer must have either purchased

---

[1] As recited in Shevland's Declaration in support of his Opposition to the Motion to Compel Arbitration, Shevland has been registered with MCG Securities LLC, a broker-dealer and member of FINRA, since April 8, 2014. Shevland Decl. ¶ 4.

[2] ARC makes much of the fact that investors were purchasing limited liability interests in ARC, not DWAC, and suggests that had the Magistrate Judge not been misled into believing otherwise, ARC would have prevailed in compelling arbitration. ARC is wrong. Whether ARC's or DWAC's shares were being purchased is beside the point; in either event, Shevland was not performing these services *for ARC*. ARC's status as the sponsor of DWAC does not transform it into Shevland's customer where ARC and Shevland never engaged in any of the activities required to make ARC a "customer" in the first instance.

goods or services from, or had an account with, the FINRA member or associated person. *See* Order at 18 ("Embedded in [the cases interpreting the meaning of "customer" under Rule 12200] is the requirement that the party asserting customer status must *engage in some sort of transaction* with *either* the FINRA-member or the associated person"). Because neither occurred here, ARC's objections fail.

As in its initial Motion to Compel, ARC again leans heavily on Shevland's Prayer for Relief from the Complaint to support its argument, arguing that Shevland's assertion that he "conferred benefits on ARC," Objection at 9-10, is essentially an admission that ARC was Shevland's customer. This is not so; as Florida caselaw regarding unjust enrichment makes clear, a party may confer a benefit on another party that warrants compensation without privity or a direct relationship between those parties. "There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact*, or privity, is not the equivalent of conferring a direct *benefit*." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013). This comes up, for example, in the context of customers claiming unjust enrichment against a manufacturer of a consumer good even though the good was sold through a retail intermediary. *See Melton v. Century Arms, Inc.* 243 F. Supp. 3d 1290, 1307 (S.D. Fla. 2017); *see also 14th & Heinberg, LLC v. Terhaar and Cronley General Contractors, Inc.*, 43 So. 3d 877 (Fla. Dist. Ct. App. 2010) (general contractor who contracted with mall tenant to improve property could still seek payment of contract fees from landlord under unjust enrichment theory after tenant went bankrupt and closed). Shevland can have bestowed a benefit on ARC through his work pursuant to his contract with Orlando without ARC having been his customer.

### 2. The Magistrate Judge properly applied precedent regarding the meaning of "customer" under FINRA's rules.

ARC further contends that the Order relies on "an erroneous interpretation of the term 'customer' in the FINRA Arbitration code that the Eleventh Circuit has rejected." Objection at 10. This is inaccurate. Rather, the Order appropriately applied *Multi-Fin. Sec. Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004), the Eleventh Circuit holding to which ARC refers, in its entirety, as opposed to "cherry-pick[ing]" the one sentence from *King* that bolsters ARC's argument in a vacuum without regard to the actual facts or holding of *King*. Order at 17.

*King* and *MONY Securities Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004) both addressed the question of who qualifies as a "customer" under FINRA Rule 12200. However, as the Magistrate Judge observed, both of those cases are factually inapposite to this case:

> In the first place, "both *King* and *MONY* turned on whether the customer of an associated person is also the customer of the broker-dealer who supervised the associated person, even if the broker-dealer had no knowledge of the transaction." Here, in contrast, Defendants have not asserted any supervision claims.
>
> Second, and more fundamentally, Defendants ignore that embedded in these cases is the requirement that the party asserting customer status must *engage in some sort of transaction* with *either* the FINRA-member or the associated person.

Order at 17-18 (quoting *Pictet Overseas Inc. v. Helvetia Trust*, 2017 WL 1040335, at *6 (S.D. Fla. Apr. 14, 2017)). The same is true of *Deutsche Bank Securities, Inc. v. Simon*, 2019 WL 4685876 (S.D. Fla. Sep. 26, 2019), on which ARC once again relies while claiming that the Magistrate Judge overlooked it in favor of caselaw from other Circuits. In fact, the court in *Simon* expressly noted that the case before it was "substantively similar to *King* and *MONY*" because it involved a

customer "alleg[ing] that [the FINRA member] failed to supervise [the associated person] in relation to the failed investment. *Id.* at *2.

ARC makes no attempt to argue that its situation, in which it was enriched by work performed by a party under contract with another party, is analogous to the negligent supervision cases presented in *King*, *MONY*, and *Simon*. Instead, ARC assigns "error" to what it deems "[t]he Magistrate Judge's choice to follow other [C]ircuits and lower court orders … ." Objection at 10-11. To the contrary, the Order is entirely consistent with both other rulings in this Court and the Eleventh Circuit's rulings. That consistency is illustrated by this Court's ruling in *Pictet I* **as well as the Eleventh Circuit's affirmation of that ruling**. As discussed *supra*, in *Pictet I* this Court held that the defendants were not "customers" under Rule 12200 because the defendants never had accounts with the plaintiffs, never bought or sold any securities from plaintiffs, and never had any contractual relationship with the plaintiffs. 2017 WL 10403345, at *5. The court went on to clarify that "a customer under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Id.* (quoting *Citigroup* 761 F.3d at 275). Again, this ruling was affirmed by the Eleventh Circuit in *Pictet II* **after** the decisions in *King* and *MONY*.

ARC further argues that this Court should be guided by a recent decision in *Tradespot Markets Inc. v. Icaro Media Group Inc.*, 2022 WL 3701201 (S.D. Fla. Apr. 1, 2022), claiming that the fact pattern in that case is "essentially Shevland's complaint in a nutshell." Objection at 12-13. This is baffling. *Tradespot Markets* was a breach of contract case brought by a FINRA member who had a formal agreement with the defendant—a fact pattern that bears no resemblance to the one at hand. Moreover, the court in *Tradespot Markets* **explicitly acknowledged**, as did the

court in *Pictet I*, that the "exceedingly broad definition" of "customer" in Rule 12200 "was slightly clarified by the Second Circuit in *Citigroup Global Markets, Inc. v. Abbar*": "There, the Second Circuit held that a 'customer' for purposes of Rule 12200 is one who, while not a broker or dealer, either '(1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member.'" *Tradespot Markets*, 2022 WL 3701201, at *2 (quoting 761 F.3d at 275). In other words, not only is the silver bullet case ARC claims should now tip the scales in its favor not factually on point, but it also affirms precisely the standard for who qualifies as a "customer" that ARC now urges this Court to ignore.

The Magistrate Judge correctly applied precedent from both this Court and the Eleventh Circuit in reaching his conclusion that ARC was not a customer of Shevland within the meaning of Rule 12200 and the caselaw interpreting that Rule. ARC's arguments to the contrary rely on a tortured and highly selective reading of the caselaw—a reading which, as did its reading in its initial Motion to Compel, "distorts the holdings of these cases and misses the mark." Order at 17. ARC's arguments notwithstanding, the Order correctly concluded that ARC was not a customer of Shevland.

3. **Where the Magistrate Judge expressed no doubt about ARC's non-customer status, the Magistrate Judge was not required to "resolve" in favor of arbitration.**

Finally, ARC suggests that the Magistrate Judge "resolved his doubts against coverage" and thereby disregarded the well-worn principle that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983). But this argument presumes that there are doubts as to whether ARC was a "customer" in the first instance. The Order expressed no doubts about ARC's non-customer status because there were no doubts to express. This rule therefore has no

application here.  *See Pictet II*, 905 F.3d at 1189 ("We acknowledge that we must resolve 'any doubts concerning the scope of arbitrable issues… in favor of arbitration.'  This rule is inapplicable here, however, because we have no doubts regarding the scope of issues arbitrable under Rule 12200") (citations omitted).

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court OVERRULE ARC's Objections to the Magistrate Judge's Order on Defendants' Joint Motion to Compel Arbitration and Stay the Case, and instead adopt the Magistrate Judge's findings and Order in full.

Date: October 14, 2022 　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Martin B. Goldberg*
　　　　　　　　　　　　　　　　　　　　　　Martin B. Goldberg
　　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 827029
　　　　　　　　　　　　　　　　　　　　　　Jonathan E. Feuer
　　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 68752
　　　　　　　　　　　　　　　　　　　　　　LASH & GOLDBERG LLP
　　　　　　　　　　　　　　　　　　　　　　Miami Tower
　　　　　　　　　　　　　　　　　　　　　　100 SE 2nd Street, Suite 1200
　　　　　　　　　　　　　　　　　　　　　　Miami, FL 33131-2158
　　　　　　　　　　　　　　　　　　　　　　Phone: (305) 347-4040
　　　　　　　　　　　　　　　　　　　　　　Fax: (305) 347-3050
　　　　　　　　　　　　　　　　　　　　　　mgoldberg@lashgoldberg.com

　　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　　　William C. Nystrom (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Raquel Frisardi (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　NYSTROM BECKMAN & PARIS LLP
　　　　　　　　　　　　　　　　　　　　　　One Marina Park Drive, 15th Floor
　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210
　　　　　　　　　　　　　　　　　　　　　　(617) 778-9100
　　　　　　　　　　　　　　　　　　　　　　wnystrom@nbparis.com
　　　　　　　　　　　　　　　　　　　　　　rfrisardi@nbparis.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 14, 2022, I electronically filed the foregoing document with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing to counsel of record.

By: /s/ *Martin B. Goldberg*
Martin B. Goldberg