UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-cv-24324-DPG

BRIAN SHEVLAND,

    Plaintiff,

v.

PATRICK ORLANDO and
ARC GLOBAL INVESTMENTS II, LLC,

    Defendants.
                                                 /

**MOTION TO SEAL AMENDED CORPORATE DISCLOSURE STATEMENT**

ARC Global Investments II, LLC ("ARC"), pursuant to Federal Rule of Civil Procedure 5.2(d), Southern District of Florida Local Rule 5.4(b), and Section 9A of the Court's CM/ECF Administrative Procedures, respectfully moves the Court for leave to file an amended corporate disclosure statement under partial seal until further order of the Court. In response to this Court's Order [ECF No. 76], ARC seeks to file an amended corporate disclosure statement under seal redacting only the names of ARC's investors/members ("members") with all other interested persons' names filed publicly. In support of such relief, ARC submits the following.

    **I. INTRODUCTION**

ARC is a Delaware limited liability company that raised funds as the sponsor for Digital World Acquisition Corp. ("DWAC") from both individual and entity investors nationwide for the purpose of potentially effectuating a Special Purpose Acquisition Company. To memorialize the investment, individuals were required to enter into subscription agreements with ARC's operating agreement attached to it.

CASE NO.: 21-24324-CIV-GAYLES

ARC has been governed by three operating agreements – one dated December 11, 2020, another dated August 21, 2021, and the most recent dated February 29, 2024. ARC's August 21, 2021, and current February 29, 2024 operating agreement provide that the members' names, capital contributions, founder shares percentages, private units percentages and/or residual percentages of each member will be maintained on a "Schedule A" attached to it. The agreement further provides that the managing member *alone* shall maintain a "confidential Schedule A" with the personal information listed above for all members, but that individual members will receive a *redacted* Schedule A containing merely their own individual information. The agreement also includes that no member shall have the right to be provided with the complete Schedule A with other members' investment information.[1] To fulfill this agreement to maintain the confidentiality of its members' names and information, ARC seeks to seal its members' names on its corporate disclosure statement.

## II. MEMORANDUM

Judicial records are presumed to be public documents because "once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). The common law right of access, however, may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir 2007) (citation omitted). When determining whether good cause to seal exists, a court must first look to "the nature and the

---

[1] Notably, ARC's original operating agreement dated December 11, 2020 does not contain these confidentiality provisions.

CASE NO.:  21-24324-CIV-GAYLES

character of the information in question." *Id*. (citation omitted).  While the Eleventh Circuit has "not articulated a set list of factors" to determine "good cause," it has stated:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Id*. (citing *In re Alexander Grant & Co., Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).  In evaluating these factors, ARC submits that its interest in maintaining the confidentiality of its members outweighs the public's need for disclosure of such information.

### A. The Nature and Characteristics of the Information

First, the nature and characteristics of the information at issue concerns the members' names, capital contributions, founder shares percentage, private placement units percentages, and/or residual percentages names of members who, based on most recent operating agreement and subscription agreement, expect that ARC will fulfill its obligation to confidentially maintain their names and personal investment information on a schedule maintained solely with ARC's managing member and no one else.  Specifically, ARC's current operating agreement provides the following under the section 2.05(a) entitled "Members":

> (a) The name, Capital Contribution, Founder Shares Percentage, Private Placement Units Percentage and/or Residual Percentage (as the case may be) of each Member of the Company are set forth on Schedule A hereto. Notwithstanding the foregoing (i) the Managing Member alone shall maintain a confidential Schedule A, containing the information set forth in the form of Schedule A attached hereto, indicating all of the foregoing items as allocated among all the Members and (ii) each particular Member (other than the Managing Member) shall be provided with a redacted Schedule A indicating the Capital Contribution, Founder's Share Percentage, Private Placement Units Percentage and/or Residual Percentage to his, her or its Membership Interest alone, and no Member shall have the right to be provided with the complete Schedule A maintained by the Managing Member.

Further, ARC's operating agreement defines "Member" as:

CASE NO.: 21-24324-CIV-GAYLES

>the Persons set forth on Schedule A and any Person or entity who becomes an additional or substitute Member as permitted by this Agreement, in such Person's or entity's capacity as a Member of the Company. 'Members' shall refer collectively to all such Persons or entities in their capacities as Members.

Considering the operating agreement's language, the nature and characteristics of the information weigh in favor of redacting members' names from public disclosure. Indeed, as set forth below, public disclosure may result in harm to members' legitimate financial and proprietary privacy interests. As a result, the Court should grant the requested relief.

### B. Harm to Legitimate Financial Privacy Interests

Second, ARC submits that while allowing access to the members' names would not impair court functions, it could harm legitimate privacy and proprietary interests. To invest with ARC, an individual or entity was required to enter into a subscription agreement. As part of this agreement, the individual or entity had to agree that the investor is an "'accredited investor' as defined by Rule 501 of Regulation D promulgated under the Securities Act." [ECF No. 46-1 at 4]. Accredited investors include "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000." 17 C.F.R. § 230.501(a)(5). As a result, if the members' individual names are not sealed, the public will know that each member's personal net worth (or joint net worth) exceeds $1,000,000. Under the circumstances, such information constitutes private financial interests that if disclosed publicly, could be used for harm or for abuse. "Personal financial information, such as one's income or bank account balance, is universally presumed to be private, not public." *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003). This alone establishes good cause to seal the members' names.

ARC's member list also has significant economic value and is proprietary. Investment-related companies routinely either compile lists of investors' names from publicly available data or pay significant amounts for investor lead lists, including "accredited investor" lists, to solicit

4

and/or prey on such individuals. *See, e.g.*, *Touizer v. Attorney Gen. of United States*, 20-CV-25169, 2021 WL 371593, at *1 (S.D. Fla. Feb. 3, 2021), *aff'd sub nom. Touizer v. U.S. Attorney Gen.*, 21-10761, 2021 WL 3829618 (11th Cir. Aug. 27, 2021) (providing that criminal "co-conspirators involved would call potential investors from lead lists"); *Sec. & Exch. Comm'n v. Davenport*, 821CV01427JLSJDE, 2023 WL 7107274, at *8 (C.D. Cal. Sept. 12, 2023) (explaining that the defendant "was involved in obtaining accredited investor lead lists"); *Sec. & Exch. Comm'n v. Credit First Fund, LP*, CV 05-8741DSFPJWX, 2006 WL 4729240, at *13 (C.D. Cal. Feb. 13, 2006) (stating "Defendants paid substantial amounts of money for investor lead lists.").

The Eleventh Circuit has ruled that a "party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Romero*, 480 F.3d at 1246 (11th Cir 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 589, 598 (1978)). ARC avers that this is one of those times. Further, "[c]ourts have found that a company's interest in the privacy of its financial records and the terms of confidential agreements . . . often outweigh the public right to access." *Graphic Packing International, Inc. v. C.W. Zumbiel Co.*, 2010 WL 6790538 * 2 (M.D. Fla. 2010) (granting the Plaintiff's Unopposed Motion to Seal). Accordingly, good cause exists to seal the members' names.

### C. ARC has Confidentially Maintained the Names

ARC has attempted to maintain its members' names as confidential. ARC is aware that seven members elected to publicly disclose their names and founders shareholdings in filings before the U.S. Securities and Exchange Commission ("SEC").

### D. Reliability of the Information and Opportunity to Respond

ARC's member information is based on the information provided to it by its investors in subscription agreements and other documents. ARC, accordingly, considers such information

CASE NO.: 21-24324-CIV-GAYLES

reliable. Moreover, ARC's August 21, 2021 and February 24, 2024 operating agreements evidence that the company has attempted to take reasonable measures to maintain the confidentiality of the members' names. And while Shevland opposes the requested relief, he will have the opportunity to dispute this motion.

### E. Availability of a Less Onerous Alternative to Sealing

ARC merely seeks to seal the names at issue. Other than sealing the names, ARC is unaware of a less onerous alternative to fulfill its obligation that its managing member will solely maintain its members' names.

### III. CERTIFICATE OF CONFERRING WITH OPPOSING COUNSEL

The undersigned certifies that he conferred with Christine Kingston, Esq., counsel for Shevland, who opposes this motion.

### IV. CONCLUSION

For all of these reasons, ARC submits that there is good cause for an order granting leave to file an amended corporate disclosure statement with only the names of ARC's members under seal until further order of the Court.

Dated: April 3, 2024                                   Respectfully submitted,

                                                                s/Joshua A. Katz
Jeffrey L. Cox
Fla. Bar No. 0173479
James D. Sallah, Esq.
Fla. Bar No. 0092584
Joshua A. Katz, Esq.
Fla. Bar No. 0848301

**SALLAH ASTARITA & COX, LLC**
3010 N. Military Trail, Suite 210
Boca Raton, Florida 33431
Tel: (561) 989-9080; Fax: (561) 989-9020
Emails: jlc@sallahlaw.com
          jds@sallahlaw.com

CASE NO.:  21-24324-CIV-GAYLES

jak@sallahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2024, a true and correct copy of the foregoing was served on all counsel or parties of record by the means set forth in the Service List below.

s/ Joshua A. Katz

**SERVICE LIST**

Martin B. Goldberg, Esq. (Service via CM/ECF)
Jonathan Elan Feuer, Esq. (Service via CM/ECF)
Lash & Goldberg LLP
*Counsel for Plaintiff*
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
(305) 347-4040
Fax: (305) 347-4050
Email: mgoldberg@lashgoldberg.com
jfeuer@lashgoldberg.com

William C. Nystrom, Esq. (Service via CM/ECF)
Christine Kingston, Esq. (Service via CM/ECF)
Nystrom Beckman & Paris, LLP
*Counsel for Plaintiff*
One Marina Park Drive
15th Floor
Boston, MA 02210
617-778-9100
Email: wnystrom@nbparis.com
rfrisardi@nbparis.com
ckingston@nbparis.com