# Exhibit 3

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT
# OF
# ARC GLOBAL INVESTMENTS II LLC

This **LIMITED LIABILITY COMPANY OPERATING AGREEMENT** (this "**Agreement**") of ARC GLOBAL INVESTMENTS II LLC, a Delaware limited liability company (the "**Company**"), is made and entered into effective as of December 11, 2020, by Lee Jacobson as the sole member of the Company (the "**Sole Member**").

## WITNESSETH:

**WHEREAS,** the Company was formed on behalf of the Sole Member on December 11, 2020 by the filing of a Certificate of Formation (the "**Certificate**") with the Secretary of State of Delaware pursuant to the terms of the Limited Liability Company Act of the State of Delaware (as the same may be amended from time to time, the "**Act**"); and

**WHEREAS**, the Sole Member now desires to formalize the organization and governance of the Company.

**NOW, THEREFORE,** for good and valuable consideration, and intending legally to be bound, the Sole Member hereby agrees as follows:

## ARTICLE ONE
## ORGANIZATION

1.1   Formation.

(a)   The Sole Member hereby ratifies the formation of the Company pursuant to the provisions of the Act. The Company's existence commenced upon the filing of the Certificate by an authorized person designated by the Sole Member. The execution and filing of such Certificate with the State of Delaware Department of State, and all actions previously undertaken by, on behalf of or in the name of the Company by affiliates of the Company or their or the Company's agents and representatives, is and are hereby authorized, approved and ratified in all respects by the Sole Member.

(b)   The Sole Member shall hereinafter be authorized to cause the Company to be qualified, or registered under assumed or fictitious name statutes or similar laws, in any jurisdiction in which the Company transacts business. The Sole Member or its designees, as authorized persons within the meaning of the Act, shall execute, deliver and file any certificates (and any amendments and/or restatements thereof) necessary or desirable for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

(c)   The rights, liabilities and obligations of the Sole Member with respect to the Company shall be determined in accordance with the Act, the Certificate and this Agreement. To the extent anything contained in this Agreement modifies, supplements

1

or otherwise affects any such right, liability, or obligation arising under the Act, this Agreement shall supersede the Act to the extent not restricted thereby.

(d) The Company shall, to the full extent permitted by law, indemnify and hold harmless any individual who executed the Certificate against any and all damages, costs or injury (including, but not limited to, all legal costs) incurred or sustained in connection with: (i) the formation and organization of the Company in the State of Delaware, and (ii) the conduct of the Company's business.

1.2 Name. The name of the Company is ARC GLOBAL INVESTMENTS II LLC.

1.3 Designated Agent; Principal Office. The Company shall maintain a registered office in the State of Delaware, and the name and address of the Company's registered agent in the State of Delaware shall be as set forth in the Certificate. The principal office of the Company shall be located at such office as the Sole Member shall designate. The Company may maintain such additional offices as may be designated from time to time by the Sole Member for the purpose of carrying out the business of the Company.

1.4 Purpose; Authorization. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, to engage in any lawful act or activity related thereto for which limited liability companies may be formed and/or conduct business under the Act and to engage in any and all activities necessary, convenient, desirable or incidental to the foregoing.

## ARTICLE TWO
## CAPITAL

2.1 Capital Contributions. The Sole Member has agreed to contribute $1.00 in cash, to the capital of the Company in exchange for one membership interest, representing all of the equity interests in the Company ("**Interests**"). Other than such capital contributions, the Sole Member shall not have any obligation to make any other capital contributions to the Company and any other capital contributions to the Company shall be made by the Sole Member on a voluntary basis.

## ARTICLE THREE
## MANAGEMENT

3.1 Management By the Managing Member. Full responsibility for management of the business and affairs of the Company shall be delegated to a manager (the "**Managing Member**"), who shall be the Sole Member. Except as otherwise expressly provided in or limited by this Agreement, the Managing Member shall have the full right, power and authority to manage all of the business, assets, affairs and operations of the Company, with all rights and powers and the full authority necessary, desirable or convenient to administer and operate the same and to make all decisions and do all things

necessary or desirable in connection therewith (including, without limitation, to admit new Members).

3.2     Officers. The Managing Member may appoint, in a written instrument, such officers of the Company (each, an "**Officer**"), with such powers, duties and responsibilities as the Managing Member, in its sole discretion, may determine from time to time. At any time, the Managing Member may, in its sole discretion, revoke any such appointment or modify, limit or amend the powers, duties or responsibilities of an Officer. Each Officer shall undertake such duties and responsibilities as are customarily associated with their appointed offices, and are authorized and directed by the Sole Member to take such actions as are necessary to (i) open bank accounts for the Company, including the authority to certify as to the adoption by the Sole Member of standard resolutions necessary to open such accounts and (ii) qualify the Company to do business in any one or more jurisdictions as may be required in order for the Company to qualify to do business in such jurisdictions.

3.3     Withdrawal; Assignments. The Sole Member shall have the right to withdraw from the Company. The Sole Member shall have the right to transfer, sell, assign, pledge or hypothecate any of its Interests.

3.4     Indemnification. The Company hereby agrees to indemnify and hold harmless the Sole Member and each Officer from and against any and all claims, actions, demands, losses, costs, expenses (including attorney's fees and other expenses of litigation), damages, penalties or interest, as a result of any claim or legal proceeding related to any action taken or omitted to be taken in connection with the business and affairs of the Company and this Agreement (including the settlement of any such claim or legal proceeding); *provided, however,* that the party against whom such claim is made or legal proceeding is directed is not guilty of gross negligence or willful misconduct as determined by a final non-appealable court of competent jurisdiction. Any indemnity under this Section shall be paid from, and to the extent of, the assets of the Company only, and only to the extent that such indemnity does not violate applicable federal and state laws.

## ARTICLE FOUR
## DISTRIBUTIONS

4.1     Generally. Distributions of Cash Flow Available for Distribution shall be made to the Sole Member at such times and in such amounts as the Sole Member shall determine. Notwithstanding the foregoing, any final distributions upon the termination or dissolution of the Company shall be made in accordance with Section 4.2 of this Agreement. In this Agreement, the term "**Cash Flow Available For Distribution**" shall mean the net receipts of the Company from any source, less expenses related to the operations of the Company and any reserves that the Managing Member believes is necessary and appropriate.

4.2     Liquidating Distributions. Upon winding up or dissolution, the Company shall pay or make reasonable provisions to pay all claims and liabilities owed to third

parties, including all contingent, conditional and unmatured claims and liabilities known to the Company, even if the identity of one or more of such claimants is unknown. If the Company has sufficient assets to pay all such claims and liabilities in full, all such claims and liabilities shall be paid in full or provision shall be made for the payment thereof in full. If the Company does not have sufficient assets to pay all such claims and liabilities in full, all such claims and liabilities known to the Company shall be paid or provided for, among claims and liabilities of equal priority, ratably to the extent of the available assets. Thereafter, the property and assets of the Company shall be distributed to the Sole Member.

4.3  No Liability. The Sole Member or liquidating trustee winding up the Company's business and affairs who complies with Section 4.2 shall not have any personal liability whatsoever to any claimants against, or creditors of, the Company by reason of such action.

## ARTICLE FIVE
## TAX MATTERS

5.1  Tax Matters. The Sole Member intends that the Company be treated as a disregarded entity for Federal, state and local income and franchise tax purposes for as long as the Interests shall be held by only one Member. In the event that the Interests shall be held by two or more Members, the Company shall be treated as a partnership for Federal, state, and local income and franchise tax purposes, and thereafter the Company shall maintain capital accounts for the Members in accordance with Treasury Regulation Section 1.704-1(b). All of the Company's taxable income and taxable losses shall be allocated to the Sole Member.

## ARTICLE SIX
## TERM

6.1  Term.

(a)  The Company shall continue in full force and effect unless dissolved by the terms of this Agreement or by law. The Company shall dissolve upon the written approval of the Sole Member.

(b)  Dissolution of the Company shall be effective on the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until articles of dissolution are filed with the State of Delaware Department of State. Notwithstanding the occurrence of an event causing the dissolution of the Company in accordance with the terms hereof, prior to the filing of the Company's articles of dissolution and the resulting termination of the Company, the business and affairs of the Company and the Sole Member in relation thereto shall continue to be governed by this Agreement.

## ARTICLE SEVEN
## MISCELLANEOUS

7.1     Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to the conflict of laws principles of such State).

7.2     Amendments.  This Agreement may be modified, altered, supplemented or amended in any manner with the approval of the Sole Member.

7.3     Captions.  The captions of articles, sections and schedules of this Agreement are for convenience only, and neither limit nor amplify the provisions of the Agreement itself.

7.4     Entire Agreement.  This Agreement, as the same may be amended from time to time in accordance with the terms hereof, contains the entire agreement of the Sole Member relating to the subject matter hereof and there are no other or further agreements outstanding not specifically mentioned herein.

7.5     Severability.  If any term or provision of this Agreement, or the performance thereof, shall be invalid or unenforceable to any extent, such invalidity or unenforceability shall not affect or render invalid or unenforceable any other provision of this Agreement, and this Agreement shall be valid and enforced to the fullest extent permitted by law.

*[Signature on the next page]*

**IN WITNESS WHEREOF**, the Sole Member has executed this Agreement as of the date first above written.

**SOLE MEMBER:**

_/s/ Lee Jacobson_
Lee Jacobson
